BLANCHE, Judge.
Carl M. Weckel, appellant, appealed a decision of the Louisiana Civil Service Commission denying his appeal from his dismissal as Accountant IV with permanent status by the Louisiana Health and Human Resources Administration, Charity Hospital at New Orleans, Louisiana, appellee.
The appointing authority dismissed appellant in a letter written September 19, 1975. Eight allegations were ■ enumerated as revealing serious deficiencies in management in the Payroll Section and Accounts Payable Section of Charity Hospital. The appellant was responsible for both sections.
No person who has gained status in the classified state service shall be subjected to disciplinary action except for cause expressed in writing with the employee having the right of appeal to the Civil Service Commission, and the burden of proof shall be upon the appointing authority. Article 10, § 8(A), Louisiana Constitution of 1974.
At the outset we note the highly significant difference between the Louisiana Constitution of 1921 and the Louisiana Constitution of 1974 regarding the burden of proof in appeals of civil service employees. Article 14, § 15(N)(l)(a) of the 1921 Louisiana Constitution provides: “The burden of proof on appeal, as to the facts, shall be on the employee.” This is in direct opposition to the rule under which the case before us must be decided.
The sole issue is whether appointing authority carried the burden of proof that the appellant was dismissed for cause.
In its opinion the Civil Service Commission stated that the appellant was responsible for the Payroll Section and the Accounts Payable Section of the Accounting Department of the hospital and listed the following “deficiencies in the management and performance of these sections”:
“1. The required monthly bank reconciliation for the payroll account had not been performed since December, 1974.
“2. The hospital group insurance report had not been completed since May of 1975 and was three months in arrears.
“3. That appellant failed to timely compile and submit summary payroll information for the three payroll periods in June, 1975. The information was submitted one and one-half months late.
“4. That appellant failed to notify his superiors of problems within the payroll section in sufficient time to permit their orderly resolution; specifically, that appellant did not initiate a formal request for additional personnel.
“5. That appellant failed to reconcile group insurance premiums for-retired Charity Hospital employees.
“6. That approximately fifty percent (50%) of all Charity Hospital employees had incorrect payroll deduc *339 tions for group insurance for one month or more due to appellant’s actions.
“7. That appellant’s inability to manage the Accounts Payable Section caused strained relations with the hospital’s vendors and led to more than one million dollars ($1,000,-000.00) being owed to vendors on overdue obligations. Further, that appellant’s files were in such a chaotic condition that information regarding these over-due obligations, some dating back nine years, had to be obtained from the vendors. That due to inaccurate information supplied by this section, Charity Hospital returned surplus funds to the State each year while overdue obligations existed.
“8. That many vendors sent the hospital copies of correspondence to the Accounts Payable Section that had not been responded to in a satisfactory fashion and that employees of appellant’s section were surly and uncooperative in dealing with certain vendors.” (Record, p. 25)
Our analysis of the eight “deficiencies in management and performance” lead us to believe that these items each referred to a lack of results which the hospital management failed to achieve in its operation. It is clear to us that Weckel, as an Accountant IV, was not a member of the top management echelon of the hospital, and the question becomes largely how much of these “deficiencies” may be properly imputed to him. As noted above, the new constitutional rule places the burden of proof as to the facts constituting cause for dismissal on the appointing authority.
Concerning the first item regarding the reconciliation of the payroll account, we are of the opinion that it was an unjustified allegation of a deficiency in management and performance. Appellant’s explanation was that it was not necessary to go through a batch of checks that match to a computer analysis when the computer analysis indicated there were no errors. As a supervisor in charge of the Payroll Section, such judgment would appear to come within the scope of his authority, absent specific instructions from a superior, which instructions are not shown in the record. There is testimony in the record to show that there had been a change in banks based on a decision made by higher authorities in the hospital administrative staff. The new bank did not render the same service as the prior bank, and the added work had to be done by the limited personnel assigned to Weckel’s supervision.
Regarding the “deficiency” items numbered two, three, five and six, we believe, in summary, that they were closely interrelated and were caused by the installation of a new computer system and a new data processing system. Charity Hospital is not the first institution in our era to experience problems resulting from the computer. As is true of other supervisors, Weckel was limited in his control over many of these events. There is evidence that during this period Weckel was conscientious and gave the hospital many hours of overtime, and our careful review of the voluminous record convinces us that it would be manifestly unfair to place the blame for these inadequacies on the appellant.
Item number four alleges that the appellant failed to initiate a formal request for additional personnel, but our review of the record causes us to believe that Weckel did all he could do to inform his superiors of his need for more workers in these sections, considering his status as an Accountant IV. We conclude that the communication methods between Weckel and his superiors were informal and that it would be grossly unfair to hold that he breached a duty to request more employees by the mere fact that he did not write a request for more personnel when there is evidence that he verbally made known the needs of his department.
Items seven and eight on the “deficiency” list involve the Accounts Payable Section. In its opinion the Civil Service Commission found several facts regarding the problems in this section. First, it found *340 that it was the policy of the section not to pay an invoice or bill if the three items required by State law were not present for payment. We can find no fault with this policy of the section and deem it to be proper. Second, it found that in excess of one million dollars in past due accounts was outstanding in the spring of 1975. While this sum is impressive, it should be placed in the perspective of the total accounts payable of over $13,000,000 annually and further to appreciate the fact that many of those unpaid accounts were due to a lack of the three necessary documents being in the hands of the section as well as other technical reasons. Third, there were cases of accounts payable being past due even when all three documents necessary for payment were present. We consider this allegation vague in the absence of specific findings, and lacking substantiation in the record, we reject it for its overbreadth. Fourth, the Accounts Payable Section did make efforts to secure missing items, specifically and most important, delivery receipts from the warehouse, but the opinion adds:
“Employees of Mr. Weckel’s section would go to the warehouse to seek delivery receipts and some would go to different sections to see if an item had been delivered. Here the procedure and supervision, however broke down. By appellant’s own admission, from this point forward, nobody did anything but wait for the missing document. Apparently, until the vendor got upset and initiated some action, nothing more was done to resolve the problem or satisfy the obligation.” (Record, p. 29)
Based upon the testimony in the record, we are of the opinion that the Accounts Payable Section did more than could reasonably be expected of it under the structural organization as we understand it. The duty of forwarding the delivery receipts was not the responsibility of the Accounts Payable Section, and when the section failed to receive them, the blame for it should properly have been placed elsewhere within the hospital administration. Also, concerning the allegation that some of the accounts dated back nine years and information had to be supplied by the vendors, we are compelled to note that Weckel did not become an Accountant IV until June of 1973. Furthermore, we doubt that it was necessary to write the vendors for information and regard this course of action as an expedient decision of a special “Task Force” sent to study the hospital’s administrative problems in the spring of 1975.
As to the final “deficiency,” we believe that counsel for appellant captured the essence of this matter when he wrote in his brief:
“ * * * The Commission preferred to overlook the testimony of the Appointing Authority’s own witnesses, vendors of Charity, * * * who testified that neither Appellant nor his employees were surly at any time to them. They did testify that they were uncooperative, but their definition of uncooperative in all instances was the fact that they were not being paid. Uncooperative = non payment — this was the gist of the testimony of these vendors. As to why these vendors were not paid, their own testimony indicated that they overshipped goods, undershipped goods, sent goods not conforming to purchase orders among other deficiencies. * * * ” (p. 10)
The testimony is clear and convincing that for a period in 1975 preceding the dismissal of appellant there was a convergence of multiple situations such as a new bank combined with the installation of a new computer system and a new data processing system which placed inordinate stress upon the personnel resources in the Payroll and Accounts Payable Sections.
Our conclusion is apparently recognized by the Civil Service Commission because its opinion is somewhat apologetic in attributing these deficiencies to appellant. We quote: “While problems of this magnitude cannot possibly be pinpointed to one person’s mistakes alone * * “While the department head cannot be charged with all of the individual errors * * “Appellant and his witnesses proved that he was a hard worker; and, except for minor infractions, Charity does not accuse him of not *341 trying hard. Management, however, is a subjective matter that is evaluated by the work product and not by hard work and that might be misdirected.” (Emphasis ours)
Our over-all evaluation of the alleged “deficiencies” leads us to believe that a desirable standard of results was lacking at Charity. Although this lack of results was reflected in the Payroll and Accounts Payable Sections, it is beyond our imagination to believe that it originated solely from the fault of one Accountant IV who the record revealed had limited executive discretion and no direct means of supplementing his work force. It is suggested that the cause lay equally elsewhere. To hold a classified civil service supervisory employee to standards of performance without allowance for corresponding decisional authority and personnel resources does not meet the legal test “for cause.”
Therefore, the decision of the Louisiana Civil Service Commission is reversed, and appellant is restored to his civil service classification with full salary from date of dismissal and with retention of all ancillary benefits and status.
Appellee is taxed with all costs of these proceedings as may legally be assessed against the State of Louisiana.
REVERSED AND RENDERED.